```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 24, 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, *et al.*,

                Petitioners,

v.

SUPERIOR SITE WORK, INC.,

                Respondent.

------------------------------------------------------X

15 Civ. 1416 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Petitioners Trustees for the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund and Trustees of the New York City Carpenters Relief and Charity Fund (collectively, the "Funds"); the New York City and Vicinity Carpenters Labor-Management Corporation (the "LMC"); and the New York City District Council of Carpenters (the "Union"; together with the LMC and the Funds, "Petitioners"), have filed this motion for summary judgment on their petition to confirm an October 30, 2014 arbitral award (the "Award"), issued by arbitrator Roger Maher (the "Arbitrator") in favor of Petitioners, and for attorney's fees and costs associated with the instant court action. Respondent Superior Site Work, Inc. ("SSW") has not opposed the petition or the summary judgment motion, nor has it otherwise appeared in this action. For the reasons set forth in the remainder of this Opinion, Petitioners' motion is granted in full.

**BACKGROUND**[1]

This case concerns an Independent Building Construction Agreement Collective (the "CBA" or the "Agreement") executed by and between the three Petitioners, which represent the various interests of New York-area carpenters (Isaac Decl. Ex. F ¶¶ 4-7), and Respondent SSW, a New Jersey corporation (*id.* at ¶ 8). With specific respect to Petitioners, four of the Funds are "employee benefit plan[s]" as defined in Section 3(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3), and "multiemployer plan[s]" within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A) (*id.* at ¶¶ 4-5); the fifth Fund is trustee of a 501(c)(3) charitable organization, 26 U.S.C. § 501(c)(3) (*id.* at ¶ 5); the LMC is a New York not-for-profit corporation (*id.* at ¶ 7); and the Union is a labor organization representing employees in an industry affecting commerce within the meaning of section 501 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 142, and is the certified bargaining representative for a subset of Respondent's employees (*id.* at ¶ 6). The original terms of the Agreement stated that it would be effective from July 1, 2001, to June 30, 2006 (Powers Decl. Ex. A), and SSW and the Union subsequently entered into two separate Interim Compliance Agreements,

---

[1] The record references in this Opinion are taken from Petitioners' Local Civil Rule 56.1 Statement of Material Facts Not in Issue ("Pet. 56.1") (Dkt. #16), and from various exhibits to the Declarations of Luke Powers ("Powers Decl.") (Dkt. #11) and Michael Isaac ("Isaac Decl.") (Dkt. #12). Citations to Petitioner's Rule 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in the Rule 56.1 Statement are supported by testimonial or documentary evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c)-(d). Finally, Petitioners' supporting memorandum of law is referred to as "Pet. Br." (Dkt. #13).

extending the CBA as between SSW and the Union until June 30, 2011.  (Pet. 56.1 ¶ 2).

By its terms, the CBA required SSW to make hourly contributions to the Funds for every hour of work performed within the Union's trade and geographic jurisdiction.  (Pet. 56.1 ¶ 3).  Additionally, the CBA required SSW to provide, upon Petitioners' request, its books and internal records for the purpose of conducting an audit to ensure that the appropriate hourly contributions were indeed being made.  (*Id.* at ¶ 4).  SSW complied with the latter requirement and, through such an audit, Petitioners determined that SSW had failed to comply with its contribution obligations.  Specifically, Petitioners determined that SSW had neither reported nor made the required Fund contributions during the period from December 15, 2013, through May 25, 2014, resulting in a principal debt of $62,293.68.  (*Id.* at ¶ 9).

The CBA provides that in any dispute between the signatories arising from a disagreement over payments owed to the Funds, either party may seek arbitration before one of the arbitrators designated by the CBA.  (Pet. 56.1 ¶ 5).  The CBA further states that if one of the named arbitrators determines that SSW owes contributions to one or more of the Funds, the arbitrator may award not only the principal amount due, but also interest, liquidated damages, and/or costs as appropriate under the trust document establishing the relevant Fund.  (*Id.* at ¶ 6).  Pursuant to these provisions, Petitioners submitted their claim for unpaid contributions to the Funds for arbitration before designated arbitrator Roger Maher.  (*Id.* at ¶ 9).

An arbitration session was scheduled for October 27, 2014, for which the parties received a Notice of Hearing on July 21, 2014. (Pet. 56.1 ¶ 11). Following the October 27 session, the Arbitrator issued the written Award, finding that SSW had violated the CBA's terms by failing to make required contributions to the Funds. (*Id.* at ¶ 13). He accordingly ordered SSW to pay the Funds a total of $79,360.23: $62,293.68 as principal contributions owed; $1,918.61 in interest on the principal owed; $12,458.74 in liquidated damages; $289.20 in assessments to the Promotional Fund; $400.00 in court costs; $1,500.00 in attorney's fees; and the $500.00 arbitrator's fee, all as contemplated by the CBA. (*Id.* at ¶ 13). Interest on the Award was to accrue at an annual rate of 5.25% from the date of its issuance. (*Id.*). As of the date of this action, SSW has failed to pay the money due under the Award. (*Id.* at ¶ 14).

On February 26, 2015, Petitioners filed the instant action under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, seeking confirmation of the Award, plus interest, as well as attorney's fees and costs for the confirmation action. (Dkt. #1).[2] On February 27, 2015, two copies of the summons and complaint were served on SSW at the Office of the New York Secretary of State. (Dkt. #6). SSW made no response and did not file a notice

---

[2] The action is therefore timely under the FAA. *See Photopaint Tech., LLC* v. *Smartlens Corp.*, 335 F.3d 152, 158 (2d Cir. 2003) ("[T]he FAA imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA.").

of appearance at that time, nor has it appeared since.  Petitioners filed the instant motion for summary judgment on June 5, 2015.  (Dkt. #10).[3]

## DISCUSSION

### A. Confirmation of the Arbitral Award

#### 1. Applicable Law

##### a. Confirmation of Arbitral Awards

The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007).  "To encourage and support the use of arbitration by consenting parties," the Court "uses an extremely deferential standard of review for arbitral awards." *Id.* at 139.  "Further, 'the federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes.'" *Supreme Oil*

---

[3] While Federal Rule of Civil Procedure 55 typically counsels that, upon a party's application, default be entered against a party that fails to appear, the Second Circuit has stated that it is "generally inappropriate" for a district court to enter a default judgment in an arbitration confirmation proceeding.  *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006).  Rather,

> [a] motion to confirm or vacate an award is generally accompanied by a record, such as an agreement to arbitrate and the arbitration award decision itself, that may resolve many of the merits or at least command judicial deference. When a court has before it such a record, rather than only the allegations of one party found in complaints, the judgment the court enters should be based on the record.

*Id.* As a result, courts should treat a request for a default judgment seeking confirmation of an arbitration award "as akin to a motion for summary judgment based on the movant's submission." *Id.* at 109-10 ("[G]enerally a district court should treat an unanswered … petition to confirm/vacate as an unopposed motion for summary judgment.").  Hence it is appropriate that here Petitioners seek, not an entry of default, but rather of summary judgment.

*Co., Inc.* v. *Abondolo*, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008) (quoting *New York Hotel & Motel Trades Council* v. *Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997)). In such cases, "[i]t is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Major League Baseball Players Ass'n* v. *Garvey*, 532 U.S. 504, 509 (2001) (internal quotations marks omitted); *see also Supreme Oil Co., Inc.*, 568 F. Supp. 2d at 406 (holding that courts cannot review the merits of arbitration awards entered into pursuant to an agreement between an employer and a labor organization).

Confirmation of an arbitration award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citation omitted); *Hall Street Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 582 (2008) ("[A] court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected [under § 10 or § 11]." (quoting 9 U.S.C. § 9)). Generally speaking, courts in this Circuit will vacate an arbitration award "only upon finding a violation of one of the four statutory bases [enumerated in the FAA], or, more rarely, if [the court] find[s] a panel has acted in manifest disregard of the law." *Porzig*, 497 F.3d at 139.[4]

---

[4]   The four statutory grounds for vacatur encompass those situations in which:
   (i)   the award was procured by corruption, fraud, or undue means;

6

In short, a party seeking vacatur of an arbitrator's decision "must clear a high hurdle." *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *see also STMicroelectronics, N.V.,* v. *Credit Suisse Sec. (USA),* 648 F.3d 68, 74 (2d Cir. 2011) ("the showing required to avoid confirmation is very high"). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case. Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co.*, 462 F.3d at 110 (internal citations and quotation marks omitted).

---

(ii) there was evident partiality or corruption in the arbitrators, or either of them;

(iii) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(iv) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Additionally, "[a]n arbitral award may be vacated for manifest disregard only where a petitioner can demonstrate both that [i] the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and [ii] the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case." *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007) (internal quotation marks omitted). The "manifest disregard" standard, first announced in *Wilko* v. *Swan*, 346 U.S. 427, 436-37 (1953), was later called into question in *Hall Street Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 585 (2008) ("Maybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them."). However, after the Supreme Court expressly declined to consider the vitality of the manifest disregard standard in *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010), the Second Circuit has "continued to recognize that standard as a valid ground" for vacatur of an arbitration award, *Schwartz* v. *Merrill Lynch & Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011).

### b.  Motions for Summary Judgment Under Federal Rule of Civil Procedure 56

A motion for summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see El Sayed* v. *Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986); *accord El Sayed*, 627 F.3d at 933.  When the moving party has asserted facts showing that the non-movant's position cannot be sustained, the opposing party must "set forth specific facts demonstrating that there is a genuine issue for trial," and cannot "merely rest on the allegations or denials" contained in the pleadings.  *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks omitted).  That said, where such a motion stands unopposed, as it does here, "the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law."  *Vt. Teddy Bear Co.* v. *1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted).

"[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials … cannot by themselves create a genuine issue of material fact where none would otherwise exist."  *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting *Fletcher* v. *Atex,*

8

*Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).  Only disputes over material facts — "facts that might affect the outcome of the suit under the governing law" — will properly preclude the entry of summary judgment.  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord SCR Joint Venture L.P.* v. *Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).

### 2. Analysis

Petitioners have pointed to sufficient evidence in the record to justify the Arbitrator's Award.  They have provided a copy of the CBA, which clearly provides for (i) the payment of specified contributions to the Funds, (iii) the payment of interest, costs, and fees associated with an arbitral award for delinquent contributions, (iii) liquidated damages,[5] and (iv) the right of a party to submit any disputes over the payment of such contributions to binding arbitration.  (Powers Decl. Ex. A, Art. XV §§ 2, 7).  They have further submitted a copy of the Arbitrator's written opinion, which indicates that Petitioner's testimony and evidence at the arbitration hearing was uncontested; a representative of SSW in fact acknowledged at the arbitration hearing that "the Company was experiencing a lack of cash flow," but that as soon as it had the funds to do so, the "outstanding delinquencies" would be paid.  (Powers Decl. Ex. E at 1-2).  This more than suffices to meet the threshold "colorable justification" required to uphold the Arbitrator's decision in favor of Petitioners.

---

[5]  ERISA additionally provides that where judgment is made in favor of a plan, in addition to the unpaid contribution amount and the interest due on unpaid contributions, the plan shall be awarded "an amount equal to the greater of … (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent … of [unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C).

Finally, there are no grounds for setting aside the Award — nothing in the record suggests that the Award has been vacated, modified, or corrected. *See D.H. Blair & Co.*, 462 F.3d at 110 ("[T]he court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" (quoting 9 U.S.C. § 9)). Furthermore, none of the statutory grounds for vacatur applies to this case: (i) the record shows no sign that Petitioners acquired the Award via corruption, fraud, or undue means; (ii) Roger Maher, was designated in the CBA as an agreed-upon impartial arbitrator; (iii) the record does not indicate misconduct or prejudicial behavior on the Arbitrator's part; and (iv) the Arbitrator acted within the explicit scope of his powers. *See* 9 U.S.C. § 10(a) (providing the four statutory grounds for vacatur of an arbitral award). Lastly, SSW has made no showing (and the Court's independent review has not revealed evidence) that, in deciding the Award, the Arbitrator acted in "manifest disregard" of the law. *Porzig*, 497 F.3d at 139. Consequently, the Court must affirm the Award.

**B.     Imposition of Attorney's Fees and Costs**

In addition to confirmation of the Award, Petitioners seek attorney's fees and costs for the instant action. The CBA contemplates that in the event a Fund successfully brings a court action to collect delinquent contributions, the Fund is entitled to: (i) the unpaid contributions, (ii) interest on the owed contributions, (iii) the greater of either the amount of interest charged on the owed contributions, or liquidated damages of 20% of the owed contributions, (iv) reasonable attorney's fees and costs of the action, and (v) any other relief a court may deem proper. (Powers Dec. Ex. A at Art. XV § 6). Furthermore,

10

Section 502(g) of ERISA, 29 U.S.C. § 1132(g), requires an award of attorney's fees and court costs where, as here, multi-employer employee trust funds subject to ERISA seek payment of contributions owed pursuant to a collective bargaining agreement.  *See, e.g.*, *Labarbera* v. *Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004).  Petitioners are therefore entitled to reasonable attorney's fees and costs for the instant action.

The Second Circuit calculates reasonable attorney's fee awards using a "presumptively reasonable fee" standard.  *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *see also Simmons* v. *N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).  In determining the presumptively reasonable fee calculation, district courts should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."  *Simmons*, 575 F.3d at 172 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *County of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008)).  These variables particularly include the fact that a "reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Arbor Hill*, 522 F.3d at 190.  Additionally, "[a]ccording to the forum rule, courts 'should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Simmons*, 575 F.3d at 174 (quoting *Arbor Hill*, 493 F.3d at 119).

Petitioners have submitted an invoice that documents the specific tasks performed, the hours spent on each task, and the corresponding associate's or paralegal's hourly billing rate. (Isaac Decl. Ex. I). A total of 12.1 hours of work was completed by four associates, who each billed $225 per hour, and three paralegals, who each billed $100 per hour. (*Id.*; Isaac Decl. ¶¶ 6-10, 12).[6] A review of this invoice demonstrates that both the total hours expended and the requested fee rates are reasonable. *See, e.g., Trustees of Sheet Metal Workers' Int'l Ass'n Local Union No. 28 Ben. Funds* v. *Maximum Metal Mfrs., Inc.,* No. 14 Civ. 2890 (JLC), 2015 WL 5771853, at *10 (S.D.N.Y. Oct. 2, 2015) (finding a total of 11.2 hours billed at a rate of $250 per attorney hour and $100 per paralegal hour "commensurate with the rates charged in this District"); *Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Interior Cinema Inc.*, No. 15 Civ. 4616 (PAE), 2015 WL 6459261, at *5 (S.D.N.Y. Oct. 23, 2015) (approving a billing rate of $225 for associates in a similar action); *Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Anthem Contracting Inc.,* No. 11 Civ. 9167 (JGK), 2013 WL 2111285, at *3 (S.D.N.Y. May 16, 2013) (confirming arbitration award and awarding attorney's fees for 20 hours of work at "rates ranging from $250 per hour for the most senior attorney to $90 per hour for paralegals"). Accordingly, Petitioners are entitled to attorney's fees in the amount of $2,447.50.

---

[6] The invoice contains one entry of attorney hours erroneously billed at $300 per hour, which the Petitioners have subtracted from their requested fees in this action. (*See* Isaac Decl. Ex. I; Pet. Br. 9 n.1).

Petitioners also seek litigation costs in the amount of $475.00. In support of their request, Petitioners provide a billing statement listing $73.98 in costs associated with service of process; $2.00 in electronic filing fees; and a $400.00 court fee for filing the complaint. (Isaac Decl. Ex. I). These costs are reasonable and are thus recoverable under 29 U.S.C. § 1132(g)(2)(D).

## CONCLUSION

For the foregoing reasons, Petitioners' motion for summary judgment on their petition to confirm the Award and for attorney's fees and costs is GRANTED in full. The Clerk of Court shall enter judgment for Petitioners, terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   November 24, 2015
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge